BRETT SCHUMAN (SBN 189247)
BSchuman@goodwinlaw.com
JEREMY LATEINER (SBN 238472)
JLateiner@goodwinlaw.com
MICHAELA OGDEN (SBN 324493)
MOgden@goodwinlaw.com
ISHIKA DESAI (SBN 340239)
IDesai@goodwinlaw.com
GIAVANNA LAGAMBA (SBN 358079)
GLaGamba@goodwinlaw.com
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, California 94105
Tel. +1 415 733 6000
Fax: +1 415 677 9041

Attorneys for Plaintiff
CHAOS INDUSTRIES, INC.

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

CHAOS INDUSTRIES, INC.,

Plaintiff,

v.

HAGEN O'NEILL and CHANDLER JOHNSON,

Defendants.

Case No. 3:26-cv-04697-SK

**PLAINTIFF CHAOS INDUSTRIES, INC.'S COMPLAINT**

JURY TRIAL DEMANDED

Plaintiff Chaos Industries, Inc. ("CHAOS," the "Company" or "Plaintiff") files this Complaint against Defendants Hagen O'Neill ("O'Neill") and Chandler Johnson ("Johnson" and collectively with O'Neill, "Defendants") as follows:

## NATURE OF THE ACTION

1. CHAOS is a leading company in the defense industry. Defendants are perfidious former CHAOS employees who were working for CHAOS on the development of a product designed to neutralize enemy drones. Unbeknownst to CHAOS, while they were supposed to be devoting all of their energies to their CHAOS work, Defendants secretly started a new business, developed a product, and began to raise capital for a new concept to neutralize enemy drones while they were employed by CHAOS.

2. On April 14, 2026 – months after they already had been secretly working on their new business venture while still employed by CHAOS – Defendants finally told CHAOS that they were planning to leave to start a new business. Upon the termination of their employment at CHAOS, and following the return of their Company laptops, CHAOS learned that Defendants had exfiltrated and misused CHAOS's confidential information.

3. CHAOS brings this action to stop Defendants from misappropriating and exploiting CHAOS's property, trade secrets and confidential information, and from using for their own benefit intellectual property relating to CHAOS's business that Defendants surreptitiously developed while they were CHAOS employees.

## THE PARTIES

4. CHAOS is a corporation organized under the laws of the State of Delaware with its headquarters and principal place of business at 12831 Weber Way, Hawthorne, California 90250.

5. O'Neill is a former employee of CHAOS. He is a resident, domiciliary, and citizen of California. On information and belief, O'Neill resides in San Francisco, California. O'Neill worked for CHAOS for less than one year, from May 5, 2025 to April 15, 2026.

6. Johnson is a former employee of CHAOS. She is a resident, domiciliary, and citizen of California. On information and belief, Johnson resides in Fairfax, California. Johnson worked

for CHAOS for approximately five months, from November 4, 2025 to April 15, 2026.

## JURISDICTION AND VENUE

7. This Court has original jurisdiction over this action pursuant to the Defend Trade Secrets Act, 18 U.S.C. § 1836, and 28 U.S.C. § 1331.

8. This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendants by virtue of their residence and activities in this forum. In addition, this Court has personal jurisdiction over Defendants by reason of their consent to the jurisdiction of this Court pursuant to the Confidentiality, Inventions Assignment and Restrictive Covenants Agreements (the "Agreements"), which they both executed at the beginning of and as a condition of their employment with CHAOS.

10. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because all Defendants reside in the Northern District of California. Venue is also proper in this Court because a substantial part of the events or omissions giving rise to the claims pled herein occurred in the Northern District of California, where the Defendants reside and worked remotely for CHAOS, and a substantial part of the property that is the subject of the claims is situated in the Northern District of California, e.g., on the computers of the Defendants. In addition, venue is proper because Defendants consented to the venue of federal courts situated within California in the Agreements.

## DIVISIONAL ASSIGNMENT

11. Pursuant to Civil Local Rule 3-2(d), this action is to be assigned to either the San Francisco Division or the Oakland Division.

## BACKGROUND

### A. CHAOS's Business.

12. CHAOS was founded in 2022. CHAOS is a defense contractor that develops and provides advanced systems for both defense and commercial applications. As events around the world increase the demand for modernized defense technologies, CHAOS has invested significant resources into the research, development, and commercialization of state-of-the-art security

technologies and products.

13. CHAOS's products are powered by its proprietary Coherent Distributed Networks technology, which detects threats to warfighters, borders, and critical infrastructure up to 10 minutes faster than traditional radar. CHAOS's current products include the ASTRIA system, for long-range applications, and the VANQUISH system, for expeditionary active radar applications including early warning detection of missiles, aircraft and drones.

14. CHAOS also has products in development that are designed to neutralize enemy drones. For example, CHAOS is developing interceptor drones, which are unmanned aerial vehicles (or UAVs, also known as drones) that are designed as to neutralize enemy drones. An interceptor drone can neutralize an enemy drone by using cameras, radars and/or artificial intelligence (AI) technology to track an enemy drone, direct itself towards that drone, and damage and disable it through a collision.

**B. Defendants' Employment At CHAOS.**

15. At the beginning of and as a condition of their employment with CHAOS, both O'Neill and Johnson entered into the Agreements with CHAOS.

16. Under the Agreements, Defendants made the following promises to CHAOS, among others:

a. While employees of CHAOS, Defendants agreed not to engage, directly or indirectly, in any other employment, consulting or other outside business activity.

b. Defendants agreed to advise an authorized officer of the Company or his or her designee as to any actual or apparent conflicts of interest.

c. Defendants agreed to make full and prompt disclosure to the Company of all inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, data, databases, computer programs, research, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship, and other intellectual property, including works-in-process (collectively "Developments") whether or not patentable or copyrightable,

that are created, made, conceived or reduced to practice by each of them (alone or jointly with others) or under their direction during the period of their employment.

d. Defendants agreed to assign and transfer to CHAOS all of their right, title and interest in and to all Developments that (a) relate to the business of the Company or any customer of, supplier to or business partner of the Company or any of the products or services being researched, developed, manufactured or sold by the Company or which may be used with such products or services; or (b) result from tasks assigned to them by the Company; or (c) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company ("Company-Related Developments"), and all related patents, patent applications, trademarks and trademark applications, copyrights and copyright applications, sui generis database rights and other intellectual property rights in all countries and territories worldwide and under any international conventions ("Intellectual Property Rights").

e. Defendants agreed that all information, whether or not in writing, concerning the Company's business, technology, business relationships or financial affairs that the Company has not released to the general public (collectively, "Proprietary Information") and all tangible embodiments thereof are and will be the exclusive property of the Company.

f. Defendants agreed that they would not, at any time, without the Company's prior written permission, either during or after their employment, disclose any Proprietary Information to anyone outside of the Company, or use or permit to be used any Proprietary Information for any purpose other than the performance of their duties as employees of the Company.

g. Defendants agreed to cooperate with the Company and use their best efforts to prevent the unauthorized disclosure of all Proprietary Information.

h. Defendants agreed to deliver to the Company all Company property and equipment

in their possession, custody or control, including all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, blueprints, models, prototypes, or other written, photographic or other tangible material containing or embodying Proprietary Information, and other materials of any nature pertaining to the Proprietary Information of the Company and to their work, and that they would not take or keep in their possession any of the foregoing or any copies.

i. For one year after the termination of their employment at CHAOS, Defendants agreed to notify the Company of each subsequent employment or business activity, including the name and address of their employer or other post-Company employment plans and the nature of their activities.

**C. CHAOS's Protection of its Trade Secrets and Proprietary Information.**

17. CHAOS takes significant steps to preserve the confidentiality of its trade secrets and Proprietary Information. For example, as discussed above, CHAOS requires employees and other parties with access to confidential, proprietary and trade secret information to sign confidentiality agreements. These agreements impose strict contractual obligations on any individual or entity receiving access to CHAOS's sensitive business and technical information.

18. Given the highly sensitive nature of CHAOS's business and products, CHAOS's stringent efforts to maintain the confidentiality of its proprietary information go beyond confidentiality agreements. CHAOS also requires its employees to abide by its employee handbook, limits access to certain information and documents on a need-to-know basis, password-protects its data network and corporate systems, maintains secure physical premises, applies confidentiality labels to much of its sensitive material, conducts exit interviews with select departing employees to ensure they are reminded of their continuing obligations to CHAOS, and uses software and other techniques to monitor for attempted exfiltration of confidential information from CHAOS systems.

///

**D. Defendants Secretly Begin Developing "Theron" with CHAOS's Proprietary Information While Still Working at CHAOS, and Also After They Leave CHAOS.**

19. Defendants first met each other while working at CHAOS. Prior to working for CHAOS, Defendants had no prior experience working in the defense industry.

20. At CHAOS, Defendants both worked on developing a CHAOS product designed to neutralize enemy drones. O'Neill worked on software for the product whereas Johnson worked mostly on software, but also on some hardware. Their work included travelling to sites in the desert to participate in testing.

21. In the one-month period before their terminations, Defendants did very little work at CHAOS. For example, during that time period, O'Neill only sent two emails from his CHAOS email account. That is because Defendants were instead dedicating their time to developing their own new business that, just like CHAOS, is also developing products to neutralize enemy drones. Defendants took multiple days at a time off work for CHAOS to focus instead on their new business, which they called Theron.

22. On April 14, 2026, Defendants notified a CHAOS executive that they both planned to leave CHAOS to start their own company together, which they told CHAOS would not be competitive with CHAOS. On April 15, 2026, CHAOS terminated the Defendants' employment with CHAOS.

23. Following their termination, Defendants agreed to meet with CHAOS for an exit interview meeting. On the day of that scheduled meeting, April 27, 2026, O'Neill cancelled the exit interview, indicating that both he and Johnson were "completely swamped for the next couple of weeks" and were only willing to "answer [] questions asynchronously over email." In response, CHAOS asked: "do you have an investor deck or other materials you can share describing your company and product?" O'Neill responded the next day: "We don't have an up to date deck to share (Sorry, early stage company). [¶] We are building a small gun turret to shoot down small drones. We are not making anything that flies or anything related to the work we did at Chaos."

24. Unbeknownst to CHAOS, these representations were largely false. Defendants

already had designed, built, and tested a product for Theron that was very closely related to their work at CHAOS, by misusing CHAOS's trade secrets and Proprietary Information. And they already were actively pitching investors to invest in their new venture by the time of the April 27, 2026 cancelled meeting.

25. Following their terminations, Defendants returned their CHAOS-issued laptops. CHAOS analyzed O'Neill's laptop and discovered a stockpile of damning information, including links to pitch materials for Theron, dated April 2 and 3, 2026, in O'Neill's personal Google Drive account (despite O'Neill telling CHAOS on April 27 "[w]e don't have an up to date deck to share"); a link to a confidential video relating to CHAOS's drone neutralization product also in O'Neill's personal Google Drive account; and a cache of notes on the Obsidian note-taking platform[1] that include confidential and trade secret information about CHAOS's hardware, software, product architecture, and user experience, among other things.

26. O'Neill's notes demonstrate that Johnson was also deeply involved with Theron while she was still a CHAOS employee, with statements such as: "Chandler and i have been working on this [Theron] for a couple weekends"; "Founders: Hagen + Chandler"; and a "Technical TODO" list that includes assignments for "Chandler" such as "print base," "print legs," 'design/print clamshell," "design/print side cover" and "design/print front/back covers."

27. O'Neill's notes show that by February 13, 2026 (two months before O'Neill and Johnson informed CHAOS that they were planning to leave to start a new business), Defendants had already conceived of two products for the new business: (a) an interceptor drone, just like the one they were working on for CHAOS for Groups 1 and 2 drones[2]; and (b) "a small turret that uses a shotgun and cameras to take down incoming drones."

28. The products that Defendants conceived of are directly related to their work at CHAOS. CHAOS's interceptor drone product is designed to neutralize multiple different types of drones. CHAOS has also used turrets for research and development purposes, including on a

[1] Obsidian is not a CHAOS-sanctioned program that it provides to its employees.

[2] Drones are categorized in Groups 1-5 based on their maximum gross takeoff weight, normal operating altitude and speed, with the lightest, lowest and slowest defined as Group 1. *See* https://www.congress.gov/crs-product/IF12797.

CHAOS project that O'Neill himself worked on in early 2026.

29. Additional notes stored on O'Neill's CHAOS laptop, dated March 16, 2026 (one month before Defendants told CHAOS that they were planning to leave to start a new business), contain an outline for a pitch deck for Defendants' new company. The outline states, among other things:

- "chandler and I met at chaos where we immediat[e]ly spent about 80 hours a week in various military deserts in the US"
- "in less than 2 months, we built and tested a successful group 3 interceptor" for which "I built all the software and she built all the hardware"
- "we learned what is actually important when winning a military contract and how to do so"
- "***<u>we also learned what holes there are in the current defense market</u>***." (emphasis added). The "[p]roblem" is that "right now there are tons of companies solving the group 3 drone problem[.]" "[T]hat is the problem we were solving at chaos[.]" "However, not a lot of people are solving the group 1-2 problem"
- "we have a working dev prototype" and "we will be doing live drone interceptions in the next week or 2 using high powered air rifle"
- "we are building a production version right now that will be ready to go into the field and can be scaled up to be produced in the thousands"
- "we will have this ready in 6-8 weeks (working weekends only)"

30. O'Neill's notes also show that Defendants were and are misleading investors into thinking that the CHAOS interceptor drone project that Defendants worked on at CHAOS was limited to certain classes of drones, which is untrue.

31. By around March 19, 2026, Defendants were communicating with potential investors about their new company. In an agenda for a meeting with one such potential investor, O'Neill's notes include confidential information about CHAOS's "group-3 interceptor program," and also include an admission that the product that Defendants conceived for their new company directly relates to their work for CHAOS. Specifically, O'Neill wrote that in working on CHAOS's

"group-3 interceptor program," "***[w]e noticed there was a hole in the market*** for defending against group 1 fpv drones." (emphasis added).

32. O'Neill's notes also demonstrate that Defendants were not just "working weekends only" on their new business. Rather, Defendants took time off from work at CHAOS to develop their products (without telling CHAOS that they were taking time off for that purpose). O'Neill's notes state: "this week ***we took 3 days off from work***." (emphasis added). "We … built some development prototypes[.]" "[T]he one here is similar design to the final production… we are quite close to production!"

33. CHAOS's understanding of the full scope of Defendants' misconduct is incomplete. What is clear, however, is that Defendants built a competitive drone defense business, Theron, while employed by CHAOS and have stolen CHAOS's trade secrets and Proprietary Information to develop and obtain funding for Theron.

34. O'Neill notes provide further clues as to the scope of their misconduct. For example, those notes contain CHAOS source code that O'Neill copied into his notes from CHAOS's private source code repository. The notes also include other confidential technical information relating to CHAOS's radar systems as well as its vision system configurations for ground-based cameras, and how CHAOS processes image signals to convert raw data from sensors into actionable information.

35. O'Neill's notes also reflect "turret prompts," a set of prompts detailing the camera configuration parameters for the turret O'Neill worked on in early 2026 for CHAOS. It appears from the notes that Defendants used this information in the development of Theron's gun turret.

36. Defendants' conduct violated numerous provisions in their respective Agreements with CHAOS. Defendants engaged in outside business activities while employed by CHAOS (without CHAOS authorization); used and disclosed CHAOS's trade secrets and Proprietary Information for purposes entirely unrelated to the performance of their duties as CHAOS employees; and failed to make the required disclosures of their Developments to CHAOS, assign and transfer all Developments to CHAOS, and return all CHAOS property. Defendants were well aware of their contractual obligations to CHAOS, but deliberately disregarded them.

37. Through their breaches of the Agreements and the misappropriation of some of CHAOS's most sensitive information, Defendants have harmed and will continue to harm CHAOS, including by depriving CHAOS of the competitive advantage afforded by its investment in and exclusive use of that information. With the benefit of this stolen information, Defendants can bypass years of substantial effort, time, and resources, and millions of dollars in research investments that Theron would need to obtain a competitive edge in government contractor work.

38. Defendants have already reaped these benefits—in record time, and with no experience in the defense industry prior to their less-than-one-year tenures at CHAOS. During their relatively brief time at CHAOS, Defendants identified what they say is a "hole in the [defense] market," developed prototypes to try to fill that perceived hole, and are close to production on technology that will compete unfairly with CHAOS. As reflected in O'Neill's own notes, the competitive opportunity Theron is targeting was discovered entirely through their work at CHAOS and access to CHAOS's trade secrets and Proprietary Information.

39. The trade secrets and Proprietary Information that Defendants have misappropriated have independent value from not being generally known, and the information cannot be readily ascertained through proper means. This is evidenced in part by the significant measures Defendants took to conceal their work on Theron while they were employed by CHAOS, and by their misuse of CHAOS's trade secrets and Proprietary Information.

40. On the morning of May 8, 2026, CHAOS sent a letter to Defendants by email and overnight mail that detailed CHAOS's concerns about Defendants' compliance with the Agreements and their disclosure and use of CHAOS trade secrets and Proprietary Information, and demanded a response by May 11, 2026. CHAOS has yet to receive a substantive response from Defendants.

41. Defendants' pattern of misconduct and deliberate evasion of CHAOS's simple and reasonable requests under the circumstances has left CHAOS with no choice but to bring this lawsuit.

**FIRST CLAIM FOR RELIEF**

**Violation of the Defend Trade Secrets Act (18 U.S.C. § 1836, *et seq.*)**

**Against All Defendants**

42. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

43. CHAOS's trade secrets relate to products or services used or intended for use in interstate or foreign commerce.

44. CHAOS has developed numerous valuable and protectable trade secrets including technology for neutralizing enemy drones, source code relating to its radar systems, and technical information relating to its radar systems, vision system configurations, and image signal processing.

45. These trade secrets derive independent economic value from not being generally known to the public or to other people who can obtain value from their disclosure or use.

46. CHAOS undertakes reasonable efforts—such as the use of employee confidentiality agreements and the implementation of security technology—to maintain the secrecy of its trade secrets.

47. CHAOS permits use of these trade secrets only for authorized business purposes by authorized employees. Any other use is not permitted.

48. Defendants willfully and intentionally misappropriated CHAOS's trade secrets by transferring them to personal or non-CHAOS devices and accounts without CHAOS's authorization, and by using them to build and try to obtain funding for Theron.

49. Defendants have used and are continuing to use CHAOS's trade secrets to, among other things, achieve their own personal objectives, including building and raising capital for Theron.

50. Defendants also disclosed CHAOS's trade secret information to potential Theron investors.

51. Defendants had knowledge of their contractual obligations to CHAOS to maintain the secrecy of all CHAOS trade secrets and Proprietary Information.

52. As a direct and proximate result of Defendants' misappropriation, CHAOS has sustained and will continue to sustain damages.

53. As a direct and proximate result of Defendants' misappropriation, Defendants were unjustly enriched.

54. As a direct and proximate result of Defendants' misappropriation, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

55. CHAOS is entitled to temporary, preliminary and permanent injunctive relief that requires Defendants, their company, and their agents, servants, employees, and all persons acting under, in concert with, or for them, to, among other things, (a) refrain from disclosing, reviewing, sharing, transmitting, or using any of CHAOS's trade secrets; (b) return all of CHAOS's trade secrets to CHAOS and destroy all copies of such trade secrets in their possession, custody, or control; (c) identify all persons and entities to whom CHAOS's trade secrets have been disclosed; and (d) submit to a forensic investigation of their personal and non-CHAOS devices, cloud storage accounts, email accounts, and other non-CHAOS platforms and accounts to verify the deletion and non-transfer of CHAOS's trade secrets.

56. CHAOS is also entitled to recover its reasonable attorneys' fees because Defendants' misappropriation of CHAOS's trade secrets was willful and malicious. 18 U.S.C. § 1836(b)(3)(D).

## SECOND CLAIM FOR RELIEF

**Violation of the California Uniform Trade Secrets Act (Cal. Civ. Code § 3426, *et seq.*)**

**Against All Defendants**

57. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

58. CHAOS has developed numerous valuable and protectable trade secrets including technology for neutralizing enemy drones, source code relating to its radar systems, and technical information relating to its radar systems, vision system configurations, and image signal processing.

59. These trade secrets derive independent economic value from not being generally

known to the public or to other people who can obtain value from their disclosure or use.

60. CHAOS undertakes reasonable efforts—such as the use of employee confidentiality agreements and the implementation of security technology—to maintain the secrecy of its trade secrets.

61. CHAOS permits use of these trade secrets only for authorized business purposes by authorized employees. Any other use is not permitted.

62. Defendants willfully and intentionally misappropriated CHAOS's trade secrets by transferring them to personal or non-CHAOS devices and accounts without CHAOS's authorization, and by using them to build and try to obtain funding for Theron.

63. Defendants have used and are continuing to use CHAOS's trade secrets to, among other things, achieve their own personal objectives, including building and raising capital for Theron.

64. Defendants also disclosed CHAOS's trade secret information to potential Theron investors.

65. Defendants had knowledge of their contractual obligations to CHAOS to maintain the secrecy of all CHAOS trade secrets and Proprietary Information.

66. As a direct and proximate result of Defendants' misappropriation, CHAOS has sustained and will continue to sustain damages.

67. As a direct and proximate result of Defendants' misappropriation, Defendants were unjustly enriched.

68. As a direct and proximate result of Defendants' misappropriation, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

69. CHAOS is entitled to temporary, preliminary and permanent injunctive relief that requires Defendants, their company, and their agents, servants, employees, and all persons acting under, in concert with, or for them, to, among other, things (a) refrain from disclosing, reviewing, sharing, transmitting, or using any of CHAOS's trade secrets; (b) return all of CHAOS's trade secrets to CHAOS and destroy all copies of such trade secrets in their possession, custody, or

control; (c) identify all persons and entities to whom CHAOS's trade secrets have been disclosed; and (d) submit to a forensic investigation of their personal and non-CHAOS devices, cloud storage accounts, email accounts, and other non-CHAOS platforms and accounts to verify the deletion and non-transfer of CHAOS's trade secrets.

70. CHAOS is also entitled to recover its costs and reasonable attorneys' fees because Defendants' misappropriation of CHAOS's trade secrets was willful and malicious. Cal. Civ. Code § 3426.4.

**THIRD CLAIM FOR RELIEF**

**Breach of Contract**

**Against All Defendants**

71. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

72. The Agreements are valid and enforceable contracts.

73. Under the Agreements, Defendants made the following promises, among others:

a. While employees of CHAOS, Defendants agreed not to engage, directly or indirectly, in any other employment, consulting or other outside business activity.

b. Defendants agreed to advise an authorized officer of the Company or his or her designee as to any actual or apparent conflicts of interest.

c. Defendants agreed to make full and prompt disclosure to the Company of all inventions, discoveries, designs, developments, methods, modifications, improvements, processes, algorithms, data, databases, computer programs, research, formulae, techniques, trade secrets, graphics or images, and audio or visual works and other works of authorship, and other intellectual property, including works-in-process (collectively Developments) whether or not patentable or copyrightable, that are created, made, conceived or reduced to practice by each of them (alone or jointly with others) or under their direction during the period of their employment.

d. Defendants agreed to assign and transfer to CHAOS all of their right, title and

interest in and to all Developments that (a) relate to the business of the Company or any customer of, supplier to or business partner of the Company or any of the products or services being researched, developed, manufactured or sold by the Company or which may be used with such products or services; or (b) result from tasks assigned to them by the Company; or (c) result from the use of premises or personal property (whether tangible or intangible) owned, leased or contracted for by the Company (Company-Related Developments), and all related patents, patent applications, trademarks and trademark applications, copyrights and copyright applications, sui generis database rights and other intellectual property rights in all countries and territories worldwide and under any international conventions (Intellectual Property Rights).

e. Defendants agreed that all information, whether or not in writing, concerning the Company's business, technology, business relationships or financial affairs that the Company has not released to the general public (collectively, Proprietary Information) and all tangible embodiments thereof are and will be the exclusive property of the Company.

f. Defendants agreed that they would not, at any time, without the Company's prior written permission, either during or after their employment, disclose any Proprietary Information to anyone outside of the Company, or use or permit to be used any Proprietary Information for any purpose other than the performance of their duties as employees of the Company.

g. Defendants agreed to cooperate with the Company and use their best efforts to prevent the unauthorized disclosure of all Proprietary Information.

h. Defendants agreed to deliver to the Company all Company property and equipment in their possession, custody or control, including all files, letters, notes, memoranda, reports, records, data, sketches, drawings, notebooks, layouts, charts, quotations and proposals, specification sheets, blueprints, models, prototypes, or other written,

photographic or other tangible material containing or embodying Proprietary Information, and other materials of any nature pertaining to the Proprietary Information of the Company and to their work, and that they would not take or keep in their possession any of the foregoing or any copies.

i. For one year after the termination of their employment at CHAOS, Defendants agreed to notify the Company of each subsequent employment or business activity, including the name and address of their employer or other post-Company employment plans and the nature of their activities.

74. Under the above provisions of the Agreements, the Company-Related Developments and related Intellectual Property Rights that arise out of Defendants' Theron-related work regarding neutralizing enemy drones while Defendants were still CHAOS employees (hereinafter, the "Theron Developments") are CHAOS's property.

75. Defendants breached the Agreements by, among other things: developing products for Theron while they were employed by CHAOS (without first obtaining permission from an authorized officer of CHAOS); failing to fully and promptly disclose the Theron Developments to CHAOS; failing to disclose conflicts of interest to CHAOS; failing to assign and transfer to CHAOS all of their right, title and interest in Company-Related Developments and related Intellectual Property Rights; transferring Proprietary Information to personal or non-CHAOS devices or accounts without permission; using Proprietary Information for purposes other than the performance of their duties as CHAOS employees; disclosing Proprietary Information to individuals outside of CHAOS; failing to use their best efforts to prevent the unauthorized disclosure of all Proprietary Information; failing to return all CHAOS property and Proprietary Information upon the termination of their employment; and failing to notify CHAOS of the nature of their post-CHAOS business activities.

76. CHAOS has performed all conditions, covenants, and promises required of it under the Agreements.

77. As a direct and proximate result of Defendants' breaches, CHAOS has sustained

and will continue to sustain damages.

78. As a direct and proximate result of Defendants' breaches, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

79. Pursuant to the terms of the Agreements, CHAOS is also entitled to an award of costs, including reasonable attorneys' fees and expenses, relating to Defendants' violations of the Agreements.

## FOURTH CLAIM FOR RELIEF

### Breach of the Duty of Loyalty

### Against All Defendants

80. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

81. Under California law, Defendants had a duty of loyalty to CHAOS as employees of CHAOS.

82. Defendants breached their duty as employees by taking actions that were inimical to the best interests of CHAOS during their CHAOS employment, including, among other things, devoting work hours to their new business (also in the field of neutralizing enemy drones) instead of CHAOS, seizing business opportunities for themselves instead of CHAOS, using and disclosing CHAOS's Proprietary Information, withholding the Theron Developments and business opportunities from CHAOS, and seeking investments for their new business while they were CHAOS employees.

83. As a direct and proximate result of Defendants' unlawful conduct, CHAOS has sustained and will continue to sustain damages. CHAOS also seeks disgorgement of all compensation and benefits that CHAOS paid to Defendants during the time period of their disloyal service to CHAOS.

84. As a direct and proximate result of Defendants' unlawful conduct, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

///

**FIFTH CLAIM FOR RELIEF**

**Violation of California's Unfair Competition Law (Cal. Bus. & Prof. Code § 17200, *et seq*.)**

**Against All Defendants**

85. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

86. Defendants engaged in unlawful, unfair, and fraudulent business acts and practices. Such acts and practices include, but are not limited to, breaching their duty of loyalty to CHAOS and converting CHAOS's property.

87. Defendants' business acts and practices were unlawful as described above.

88. Defendants' business acts and practices were fraudulent in that a reasonable person would likely be deceived by the material misrepresentations and omissions made by Defendants in the course of their conversions and breaches of the duty of loyalty. Defendants hid their new business from CHAOS while continuing to be employed by CHAOS and having access to CHAOS's trade secrets and Proprietary Information.

89. Defendants' business acts and practices were unfair in that the substantial harm suffered by CHAOS outweighs any justification that Defendants may have for engaging in those acts and practices, and Defendants' conduct significantly threatens or harms competition.

90. CHAOS has been harmed as a result of Defendants' unlawful, unfair, and fraudulent business acts and practices. CHAOS is entitled to (a) recover restitution, including without limitation, all benefits that Defendants received as a result of their unlawful, unfair, and fraudulent business acts and practices; and (b) an injunction restraining Defendants from engaging in further acts of unfair competition.

**SIXTH CLAIM FOR RELIEF**

**Declaratory Judgment re: Ownership of the Theron Developments**

**Against All Defendants**

91. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

92. Pursuant to 28 U.S.C. § 2201(a), the Court may declare the rights, status, or legal relations of interested parties to a contract when a controversy exists between the parties regarding the contract.

93. Under the Agreements, Defendants agreed that CHAOS shall own all right, title and interest in all Company-Related Developments and all related Intellectual Property Rights.

94. Under the Agreements, Defendants agreed to make all assignments necessary to transfer ownership of the Company-Related Developments and related Intellectual Property Rights to CHAOS. Defendants also agreed to cooperate fully with CHAOS with respect to the procurement, maintenance and enforcement of Intellectual Property Rights in Company-Related Developments.

95. Under the Agreements, Defendants are obligated to promptly disclose to CHAOS any Developments, including any Developments that Defendants may contend are subject to California Labor Code Section 2870, so that CHAOS may "determine[e] whether they qualify for such exclusion."

96. In addition, under the Agreements, Defendants agreed to not engage in any other employment, consulting or other outside business activity while they were employed by CHAOS.

97. The Agreements are valid and legally binding contracts between Defendants and CHAOS.

98. CHAOS has fully performed its contractual obligations under the Agreements. Defendants' Developments for their new business relating to neutralizing enemy drones (the Theron Developments) relate to CHAOS's actual and demonstrably anticipated business and was within the scope of Defendants' professional responsibilities at CHAOS.

99. The Theron Developments were developed in whole or in part while Defendants were CHAOS employees. Under the Agreements, the Theron Developments are Company-Related Developments and Intellectual Property Rights that Defendants are obligated to assign to CHAOS.

100. Defendants' use of the Theron Developments for their new business was a breach of the Agreements.

101. Defendants had an obligation to disclose and transfer the Theron Developments to CHAOS and not use them at their new business by virtue of the Agreements and their duty of loyalty under California law, because withholding the Theron Developments from CHAOS and using them at their new business was contrary to CHAOS's business interests.

102. There exists an actual, immediate, real, and substantial controversy between the parties having adverse legal interests regarding the ownership of all rights, title, and interest to the Theron Developments and Theron.

103. The Court should declare that CHAOS is the owner of, and order Defendants to convey to CHAOS, all right, title, and interest in the Theron Developments and Theron.

104. The Court should order a full accounting of all Theron Developments and all Theron assets.

105. The Court should order Defendants to convey to CHAOS all documents, data and other materials relating to the Theron Developments.

106. The Court should order Defendants to destroy all copies of all documents, data and other materials relating to the Theron Developments.

**<u>SEVENTH CLAIM FOR RELIEF</u>**

**Conversion**

**Against All Defendants**

107. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

108. CHAOS has a property interest in the Theron Developments by virtue of the Agreements and Defendants' former status as CHAOS employees. CHAOS's property interest includes at least all right, title and interest in the Theron Developments.

109. Defendants wrongfully exercised dominion over the Theron Developments by failing to assign them to CHAOS and also by using the Theron Developments for their own benefit and the benefit of their new business, Theron.

110. CHAOS has been or will be damaged by Defendants' conversion by among other

things, being deprived of the use and benefit of the Theron Developments, and also by Defendants' and Theron's continuing use of the Theron Developments.

111. As a direct and proximate result of Defendants' conversion, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

**EIGHTH CLAIM FOR RELIEF**

**Civil Conspiracy**

**Against All Defendants**

112. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

113. Defendants knowingly and willfully conspired and agreed amongst themselves to convert the Theron Developments and to cause one another to breach their duties of loyalty to CHAOS. Defendants furthered the conspiracy by cooperating amongst themselves, by lending aid and encouragement to one another, and by ratifying and adopting the wrongful acts of one another.

114. Despite the Agreements, Defendants failed to assign the Theron Developments to CHAOS, used the Theron Developments for their own benefit and the benefit of Theron, and took actions that were inimical to the best interests of CHAOS during their CHAOS employment, including, among other things, devoting work hours to their new business instead of CHAOS, seizing business opportunities for themselves instead of CHAOS, withholding the Theron Developments and business opportunities from CHAOS, and seeking investments for their new business while they were CHAOS employees.

115. As a direct and proximate result of Defendants' conspiracy, CHAOS has suffered injury and harm, and Defendants have been unjustly enriched.

116. As a direct and proximate result of Defendants' conspiracy, CHAOS has suffered and will continue to suffer irreparable harm, for which there is no adequate remedy at law.

///

///

///

**NINTH CLAIM FOR RELIEF**

**Unjust Enrichment**

**Against All Defendants**

117. CHAOS incorporates by reference and realleges all the foregoing paragraphs of this Complaint as if fully set forth herein.

118. Defendants have been unjustly enriched, at the expense of CHAOS, through their deliberate and wrongful conduct in using and converting the Theron Developments for their own benefit and for the benefit of their new business, Theron.

119. Defendants have no lawful right to use or convert the Theron Developments for themselves and Theron.

120. CHAOS has received no benefit from the Theron Developments, even though they are CHAOS property. The harm caused by Defendants' unjust retention of the benefits of the Theron Developments continues to accrue to this day.

**PRAYER FOR RELIEF**

CHAOS respectfully requests that the Court enter a judgment against Defendants and prays for an award as follows:

1. The entry of judgment in favor of CHAOS, and against Defendants, for each of the above claims.

2. Granting a temporary restraining order, preliminary injunction, and permanent injunction enjoining and restraining Defendants, their company and their respective agents, servants, employees, and all persons acting under, in concert with, or for them, to:

a. refrain from using or disclosing any of CHAOS's trade secrets or Proprietary Information;

b. return to CHAOS all documents, files, data, and materials (in whatever form, including electronic) containing or reflecting CHAOS's trade secrets or Proprietary Information, and to destroy all copies thereof in their possession, custody, or control, including on any personal or non-CHAOS devices, cloud

storage accounts, email accounts, or other non-CHAOS platforms or drives;

c. identify all persons and entities to whom Defendants have disclosed, transferred, or made available any of CHAOS's trade secrets or Proprietary Information; and

d. submit to an expedited forensic examination of Defendants' personal and non-CHAOS devices, cloud storage accounts, email accounts, and other non-CHAOS platforms and devices to verify the deletion and non-transfer of CHAOS's trade secrets and Proprietary Information;

3. Granting declaratory relief;

4. Awarding damages in favor of CHAOS and against Defendants in amounts to be determined at trial, including actual damages, restitution, disgorgement of profits, disgorgement of compensation and benefits, and reasonably royalties;

5. Awarding punitive damages in favor of CHAOS and against Defendants in an amount to be determined at trial;

6. Awarding CHAOS's pre-judgment and post-judgment interest, its attorneys' fees and costs, and other expenses incurred in this action; and

7. For any such other further relief as this Court deems just and proper.

**JURY DEMAND**

CHAOS hereby demands a jury trial on all issues and claims so triable.

Dated: May 15, 2026

Respectfully submitted,

By: */s/ Brett Schuman*

BRETT SCHUMAN (SBN 189247)
BSchuman@goodwinlaw.com
JEREMY LATEINER (SBN 238472)
JLateiner@goodwinlaw.com
MICHAELA OGDEN (SBN 324493)
MOgden@goodwinlaw.com
ISHIKA DESAI (SBN 340239)
IDesai@goodwinlaw.com
GIAVANNA LAGAMBA (SBN 358079)
GLaGamba@goodwinlaw.com
**GOODWIN PROCTER LLP**
525 Market Street, Floor 32
San Francisco, CA 94105
Tel.: +1 415 733 6000

Attorneys for Plaintiff
CHAOS INDUSTRIES, INC.

**CERTIFICATE OF SERVICE**

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States District Court for the Northern District of California by using the CM/ECF system on **June 8, 2026**. I further certify that all participants in the case are registered CM/ ECF users and that service will be accomplished by the CM/ECF system.

I certify under penalty of perjury that the foregoing is true and correct. Executed on **June 8, 2026**.

/s/ *Brett M. Schuman*
BRETT M. SCHUMAN